UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEDCO HEALTH SOLUTIONS
OF NETPARK, LLC, a/k/a
EXPRESS SCRIPTS, INC.,

    Plaintiff,

v.                                  CASE NO.: 8:13-cv-1656-T-23TBM

UNITED STEEL, PAPER & FORESTRY,
RUBBER MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION
AFL-CIO, on behalf of its Local 991,

    Defendant.
_____/

**ORDER**

United Steel, Paper & Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO represents approximately 170 pharmacists employed by Medco Health Solutions of Netpark. In 2009 and 2010, the employer and the union negotiated a collective bargaining agreement (CBA) for March 4, 2010, through March 3, 2013. (Doc. 3-2) Because the parties failed to agree on the weekly number of paid-leave hours allowed to a shop steward for union business (Doc. 3-4), the parties incorporated into the CBA as Article XII(E) a requirement "to meet within a reasonable time period after ratification of th[e] CBA to determine the appropriate hours designated as Union Paid Time on a weekly basis." (Doc. 3-4)

Between September 16, 2010, and December 13, 2011, the parties held four meetings in accord with Article XII(E) to negotiate paid leave for union business. (Doc. 6 at 3)  The parties scheduled a fifth meeting, but the union declined to attend the meeting.  (Doc. 6 at 3)  Declaring an "impasse" on February 9, 2012, the employer imposed a cap of fifteen hours a week on paid leave for union business. (Docs. 1 at ¶¶ 22-23, 7-24, and 7-25)  The cap began on February 13, 2012, and continued through the end of the CBA in March, 2013.  (Docs. 5 at ¶ 13 and 10 at ¶ 13)

On April 24, 2012, the union lodged a grievance against the employer. (Doc. 7-2 at 3)  The grievance alleges that the employer violated Article I and Article XII(E) of the CBA when "[t]he Company unilaterally decided to no longer pay for Union Business Hours after 15 hours each week."  (Doc. 7-2 at 3)  The union requested that the employer "discontinue th[e] practice of limiting paid Union Business after 15 hours [each week]."  (Doc. 7-2 at 3)  The employer denied the grievance.

Deadlocked on the question of a cap for paid leave for union business, the parties stipulated to the following "issue" for submission to arbitration:

> Did the Company violate Article XII Section E of the 2010-2013
> collective bargaining agreement with respect to paid union
> business leave. If so, what shall the remedy be?

(Docs. 3-3 and 3-8)  An arbitration occurred on March 21, 2013.  (Docs. 3-1 and 7-1 through 7-26)  Each party presented evidence, argument, and a post-hearing brief. (Docs. 3-1 and 7-1 through 7-26)

On May 16, 2013, the arbitrator issued a written opinion and award. (Doc. 3-1) In pertinent part, the opinion and award states:

### ISSUE

Whether the employer violated the Collective Bargaining Agreement (CBA), Article I and XII(E) when the employer put a cap on the number of paid hours for union business at fifteen hours each week. (Commenced on February 13, 2012).

### CBA PROVISIONS

### Article I – Recognition

The Employer recognizes the Union as the exclusive representative for purposes of collective bargaining of all staff registered pharmacists employed at the employer's pharmacies . . . .

### Article XII – Shop Stewards [Section E]

Union representatives will clock into a designated pay code determined and communicated by the Company when performing union business. Union business is defined as any non-production time spent representing employees in a steward and/or executive board capacity including time spent as scheduled union office hours. The company and the union will meet within a reasonable time period after the ratification of this CBA to determine the appropriate hours designated as Union Paid Time on a weekly basis.

### FACTS

The parties negotiated a collective bargaining agreement effective 03/05/10[] to 03/03/13. They did not agree on a cap for the time spent on union business. Since the rest of the CBA was agreed to, the agreement was executed and Article XII, Section E was utilized. They agreed to have meetings to determine the issue.

> Four meetings took place between the local union and the employer. The International Union, which in Article I, is recognized "as the exclusive representative for purposes of collective bargaining of all staff registered pharmacists employed at the employers pharmacies" was not present.
>
> A fifth meeting was set up; however, the union did not attend it.
>
> Since no agreement was reached, the employer sent a memo that beginning on February 13, 2012 the paid hours for union business are limited to fifteen hours each a week.
>
> The union filed a grievance over this and a complaint to the National Labor Relations Board. The board deferred to arbitration.
>
> ### **CONCLUSION**
>
> The CBA did not expressly empower the employer to set a cap on the time spent on union business.
>
> For years, there was no cap. To set a cap, it must be bargained in the absence of an agreement.
>
> Since the CBA is silent as to a cap, past practice prevails and there is no cap for the life of the 2010-2013 Agreement.
>
> The parties may bargain otherwise, but in absence of an Agreement, the past practice shall prevail. "Past practice" is fully discussed in Chapter 12 of <u>How Arbitration Works</u> 7th Ed., Elkouri & Elkouri.
>
> ### **AWARD**
>
> The grievance is sustained and the union shall be reimbursed for the amounts it paid its members for union work in excess of fifteen hours a week from February 13, 2012 to the present. Costs of this arbitration shall be split between the parties, per the Collective Bargaining Agreement.

(Doc. 3-1 at 1-3).

The employer sues (Doc. 1) the union to vacate the arbitrator's award. Each party moves (Docs. 6 and 11) for summary judgment.[1]

The parties agree that judicial review of a labor arbitration decision is "exceedingly narrow." *Loveless v. Eastern Air Lines*, 681 F.2d 1272, 1275 (11th Cir. 1982). Also, the parties agree that, even if patently incorrect, an arbitrator's award governs unless the award exceeds the scope of the arbitrator's authority, unless the award fails to "draw its essence" from the collective bargaining agreement, or unless the award is irrational. *Butterkrust Bakeries v. Bakery, Confectionery & Tobacco Workers*, 726 F.2d 698, 699 (11th Cir. 1984); *Loveless*, 681 F.2d at 1276.

The employer argues that the arbitrator's inclusion in his statement of the issue for arbitration of a possible violation of Article I exceeds the scope of authority bestowed on the arbitrator by the parties' stipulation, which expressly limits the arbitrator's inquiry to a possible violation of Article XII(E). The employer further argues that the arbitrator's (1) disallowing the employer's fifteen-hour cap on paid leave for union business and (2) awarding compensatory damages for unpaid leave for union business exceeds the scope of the arbitrator's authority to award a remedy for breach of a requirement that the employer and the union meet and agree to a cap. Stated differently, the employer objects to the arbitrator's disallowing the employer's cap and objects especially to the arbitrator's doing so as a remedy for breach of a

---

[1] The union correctly (and without objection) notes that the employer's motion to vacate (Doc. 6) should be treated as a motion for summary judgment. (Doc. 11-1 at 2)

contractual provision that contemplates the creation of a cap. As summarized by the employer:

> The Arbitrator exceeded the scope of authority and jurisdiction vested upon him by consent of the parties by deciding an issue other than the one stipulated to and presented by the parties. The Arbitrator also impermissibly dispensed his own brand of industrial justice. The Award does not draw its essence from the CBA, and therefore is unenforceable and should be vacated in its entirety.

(Doc. 6 at 4)

The employer argues (1) that the parties submitted for arbitration "a clear, stipulated issue" about Article XII(E) and that the arbitrator "for reasons known only to him" re-cast the issue to include a possible violation of Article I; (2) that the parties authorized the arbitrator to consider only the employer's compliance with a clause that required negotiation toward a cap but that the arbitrator decided, instead, that "past practice" obligated the employer in the absence of a negotiated cap to compensate for unpaid leave for union business; and (3) that the arbitrator's decision, which invokes "past practice" rather than an explicit command from the CBA in disallowing the cap and imposing compensatory damages, resolves a non-arbitrable "Barred Matter" because the decision ventures outside "the application, interpretation, and enforcement of the express terms" of the CBA.

The union responds and argues (1) that a singularly deferential standard governs judicial review of an arbitration award; (2) that the arbitrator's statement of the issue, considered in light of the ambiguous stipulation and the open-ended question ("[W]hat shall the remedy be?") that the stipulation includes, reasonably

- 6 -

and fairly captures the issue actually stipulated for arbitration; (3) that the parties' stipulated issue for arbitration fails to specify which conduct (that is, the four negotiating sessions and the declined fifth session, the employer's establishment of a cap, or some other conduct "with respect to paid union business leave") the stipulation directs the arbitrator to evaluate; and (4) that, although the employer dislikes the contract interpretation the arbitrator rendered, the arbitrator resolved the grievance by interpreting the contract and by employing only the permissible interpretive tools in arriving at a rational result.

Each party elaborates and supports these (and some auxiliary) arguments. Each party offers an array of legal principles and citations that, in general, are valid in an applicable circumstance. The difference between the parties originates with the employer's contention that the stipulated issue confines the arbitrator to a single question and the arbitrator unlawfully breached the confines of that question. Although undertaking to deny the arbitrator the ability to re-state the stipulated issue for arbitration, the employer undertakes to re-state (and, simultaneously, explain) the stipulated issue for arbitration. The employer's effort, which reads as follows, is instructive:

> The Arbitrator was tasked with determining whether the Employer had complied with Article XII(E) by meeting four times, and attempting to meet a fifth time, to discuss the issue of placing a cap on the number of paid union business hours. If the Arbitrator determined that Article XII(E) had been violated, the parties should have been ordered to go back to the bargaining table and negotiate a cap. If Article XII(E) was not violated, then the current cap of 15 hours per week would stand.

(Doc. 6 at 4)

In other words, the employer concludes, or formerly concluded, that this last re-statement of the parties' stipulated issue for arbitration is identical in content to the parties' initial stipulated issue for arbitration, which asks:

> Did the Company violate Article XII, Section E of the 2010-2013 Collective Bargaining Agreement with respect to paid union business leave[?] If so, what shall the remedy be?

(Doc. 3 at 8)  Whatever one can conclude about these two formulations of the issue for arbitration, one cannot fairly, reasonably, and disinterestedly conclude that the two are necessarily, unavoidably, and manifestly identical and that no rational observer will detect a difference.  On the contrary, any disinterested observer will readily observe that the parties' initial and binding stipulated issue for arbitration is strikingly broader and looser than the employer's re-statement.

Two critical differences between the parties' stipulation and the employer's re-statement appear prominently.  First, the parties' stipulation asks if a violation occurred under Article XII "with respect to paid union business leave."  On the other hand, the re-statement the employer tenders in the papers in this action asks if a violation occurred under Article XII "by meeting four times, and attempting to meet a fifth time, to discuss the issue of placing a cap on the number of paid union business hours."  The parties' stipulation includes any Article XII(E) matter – meeting, not meeting, bargaining, failing to bargain, paying, not paying, paying more, paying less, fixing a cap, fixing no cap, etc. – "with respect to paid union business leave."  "With respect to" is a notoriously unbounded and permissive

- 8 -

phrase, and the employer unwisely and fatally relied on the phrase to narrow – unmistakably and inflexibly – the arbitrator's authority to a single, compressed but unstated episode. In sum, the employer relied on an inexact and encompassing phrase to accomplish a precise and directory task – an assignment to which the phrase is unequal.

Second, the employer's re-statement of the stipulated issue for arbitration includes exactly the contemplated remedy. The re-statement provides that, if the arbitrator finds a violation of Article XII(E), "the parties should have been ordered to go back to the bargaining table and negotiate a cap." In stark contrast, the parties' actual stipulation fails to specify the contemplated remedy and, instead, poses the anemic and plaintive inquiry, "[W]hat shall the remedy be?" To speak pointedly, had the original stipulation contained the directive contained in the employer's re-statement, the employer's arguments would more nearly persuade and the legal principles the employer cites would more nearly apply. In fact, the employer's re-statement illustrates vividly the precise reason that the original stipulation is not what the employer wishes (and not, undoubtedly, what the employer intended).

## **CONCLUSION**

Because the original stipulation is, as stated earlier, broader and looser than the employer's re-statement, the arbitrator's determination – even though more probably wrong than right – is not susceptible to attack as outside the scope of the arbitrator's authority, as not "drawing its essence" from the CBA, or as irrational. For that reason, the arbitrator's award is **SUSTAINED**. The employer's motion for summary

- 9 -

judgment (Doc. 6) is **DENIED**.  The union's motion for summary judgment (Doc. 11) is **GRANTED**.

The Clerk (1) will enter judgment for United Steel, Paper & Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO, on behalf of its Local 991, and against Medco Health Solutions of Netpark, LLC, a/k/a Express Scripts, Inc.; (2) will terminate any pending motion; and (3) will close the case.

ORDERED in Tampa, Florida, on April 4, 2014.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE